UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELSIE A. RODRIGUEZ RUIZ,

          DECISION AND ORDER

      Plaintiff,

          18-CV-6404L

    v.

ANDREW SAUL,
Commissioner of Social Security,

      Defendant.
_____

    Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final determination.

    On February 12, 2014, plaintiff, then thirty-two years old, filed an application for disability insurance benefits and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act, alleging an inability to work since November 1, 2003. (Administrative Transcript, Dkt. #8-2 at 14). Her application was initially denied. Plaintiff requested a hearing, which was held on April 4, 2017 via videoconference before Administrative Law Judge ("ALJ") David J. Begley. The ALJ issued a decision on August 29, 2017, concluding that plaintiff was not disabled under the Social Security Act. (Dkt. #8-2 at 14-25). That decision became the final decision of the Commissioner when the Appeals Council denied review on March 28, 2018. (Dkt. #8-2 at 1-3). Plaintiff now appeals. The plaintiff has moved for judgment remanding the matter for the calculation and payment of benefits or alternatively for further proceedings (Dkt. #11), and

the Commissioner has cross moved (Dkt. #13) for judgment on the pleadings, pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the Commissioner's decision that plaintiff is not disabled is affirmed.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision exhaustively summarizes plaintiff's medical records, which reflect diagnoses of anxiety disorder, major depressive disorder, a learning disorder, and migraine headaches, which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment. Upon consideration of the record, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels, with the following limitations: must avoid concentrated exposure to excessive noise and bright lights outside of a normal office setting; must avoid irritants such as fumes, odors, dusts, gases, and poorly ventilated areas; can do simple, routine, repetitive tasks; must work in a low stress job, defined as having no fixed production quotas, no hazardous conditions, no more than occasional decision making required, no more than occasional changes in the work setting, and no more than occasional interaction with coworkers, supervisors, and the general public. (Dkt. #8-2 at 20-21).

Given this RFC, vocational expert Dr. Bassey A. Duke testified that plaintiff could perform the positions of hand packager (medium exertional level), cleaner (light exertional level), silverware wrapper (light exertional level), and assembler (sedentary exertional level). (Dkt. #8-2 at 24-25).

I believe the evidence supports the ALJ's findings concerning the nature and extent of plaintiff's limitations, and that his finding that the plaintiff was not disabled was supported by substantial evidence and was not the product of reversible legal error.

I.     **The ALJ's RFC Finding**

Initially, plaintiff argues that the ALJ erred when he found that plaintiff has the severe impairments of a learning disorder and migraine headaches, but failed to include appropriate limitations in his RFC finding. For example, the ALJ noted that consultative examiner Dr. Harbinder Toor had opined in May 2014 that plaintiff's "pain and headache can interfere with routine," (Dkt. #8-2 at 17, #8-7 at 360-77), but did not explicitly impose any headache-related limitations on attention and concentration or routine-keeping in his RFC finding. Plaintiff also argues that the ALJ's finding that the "claimant has a limited education" does not accurately reflect the true nature of plaintiff's limitations, and argues that the ALJ should have instead found plaintiff to be illiterate. (Dkt. #8-2 at 24, #8-9 at 630, #8-10 at 668).

Initially, whether a claimant can speak and read or write in English is a factor of her education. *See* 20 C.F.R. §416.964(b) ("[t]he term *education* also includes how well you are able to communicate in English."). As the Commissioner points out, plaintiff testified that she had completed the eleventh grade, which "if there [was] no other evidence to contradict it," would have furnished a sufficient evidentiary basis for the ALJ's finding that plaintiff's education level is

"limited." *See* 20 C.F.R. §416.964(a) ("if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities").

Here, however, there was some evidence in the record that plaintiff's completion of the eleventh grade – in Puerto Rico, with special education courses and the taking of oral examinations due to her inability to read and write with sufficient proficiency in Spanish – was not a complete or accurate reflection of her educational level. In addition to being illiterate in Spanish, the record also established that plaintiff cannot speak, read, or write in English: her hearing, and all of her medical examinations and treatment visits, appear to have required the use of an interpreter.

However, to the extent that the ALJ erred in declining to find plaintiff "illiterate" rather than possessed of a "limited education," such error is harmless. First, since the ALJ's disability determination did not depend on an application of the Grids (by which disability is determined with reference to a claimant's age, education level, exertional level etc.),[1] the fact that the ALJ's written decision may have erroneously mis-identified plaintiff's educational level does not necessarily undermine the ALJ's ultimate finding as to disability. Because the Commissioner instead relied on vocational expert testimony to meet his burden to establish that there are other jobs plaintiff can perform, the relevant question is whether the ALJ's hypothetical questions to the vocational expert were polluted by an erroneous description of plaintiff's educational history and/or literacy level, such that the Commissioner has failed to meet his burden to show that there are jobs existing in significant numbers in the national economy that plaintiff can perform.

Here, the ALJ's hypothetical to the vocational expert did not invoke a "limited education," but rather, relied on plaintiff's own testimony concerning her education. The vocational expert,

---

[1] Indeed, even if the Grids had been applicable, an individual of plaintiff's age, work experience, etc. would be found "not disabled" at both the light and sedentary exertional levels – for which the vocational expert here specified multiple jobs – even if her educational level was determined to be "illiterate." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

Dr. Duke, was present for plaintiff's testimony – given through an interpreter – that she completed school through the 11th grade in Puerto Rico, that she had been administered oral tests in Puerto Rico due to her inability to read and write, and that she was unable to pass written tests (such as a written exam to obtain a driver's license) in English. Dr. Duke was immediately thereafter asked by the ALJ, based on his "knowledge, education, training and experience," to assume a hypothetical individual with "[plaintiff's] education." (Dkt. #8-2 at 63). The record contains no suggestion that Dr. Duke failed to understand plaintiff's testimony concerning her education, or that plaintiff's hearing testimony describing her academic performance, illiteracy, and language barriers, was inaccurate or incomplete. (Dkt. #8-2 at 63). *See e.g.*, *Molina v. Colvin*, 2014 U.S. Dist. LEXIS 140492 at *24 (W.D.N.Y. 2014) (ALJ's failure to include illiteracy in RFC finding is harmless error, where vocational expert had reviewed the exhibits of record and was asked to consider an individual with the claimant's education level). In fact, at least one of the positions identified by Dr. Duke – silverware wrapper – has been identified by other courts as one which does not even require the ability to communicate in English. *See e.g.*, *Cortes v. Commissioner*, 2015 U.S. Dist. LEXIS 97840 at *6 (E.D. Cal. 2015) (silverware wrapper position does not require the ability to speak English); *Vankham v. Commissioner*, 2014 U.S. Dist. LEXIS 178924 at *3 (E.D. Cal. 2014) (same). As such, regardless of the ALJ's finding in his written decision that the plaintiff's education level was "limited" rather than "illiterate," the Commissioner has met his duty to show that there are positions in the national economy that plaintiff can perform, given her education level, language proficiency and literacy level.

Furthermore, despite plaintiff's assertion that she has learning difficulties, substantial evidence supports the ALJ's finding that plaintiff can nonetheless perform simple, quota-free tasks not requiring more than occasional decision making. Consulting examiner Dr. Brownfeld found

5

that plaintiff was able to count, do simple calculations and perform serial 3s, and plaintiff's treating therapist, Dr. Sudha Bakshi, generally noted that plaintiff had a good general fund of information, and exhibited good judgment, focused thought processes, intact memory and concentration, and normal cognition. (Dkt. #8-7 at 383-84; #8-10 at 680, 682, 688; #8-11 at 837, 839, 841). Plaintiff completed the 11th grade in Puerto Rico, albeit with testing accommodations for her reading and writing limitations. In short, substantial evidence of record supports the ALJ's finding that despite her learning disability, plaintiff is capable of performing simple, low-stress, quota-free work with only occasional interactions with others. *See generally Graves v. Astrue*, 2012 U.S. Dist. LEXIS 144024 at *26 (W.D.N.Y. 2012) (limitation to simple, routine, repetitive tasks with occasional decision-making and occasional changes to the work setting sufficiently accounts for leaning disability).

With respect to plaintiff's claim that the ALJ failed to sufficiently account for the effect of her migraine headaches on her ability to perform work-related functions, I find that the ALJ's RFC determination was supported by substantial evidence. Although medical records from 2012-2013 indicate more frequent and severe headaches, plaintiff testified at her April 4, 2017 hearing that she gets a headache 3 or 4 times per month, lasting 30-60 minutes, and that her symptoms are improved with medication. (Dkt. #8-2 at 58-60). The ALJ also noted that plaintiff's headaches did not appear to interfere with her performance of daily activities, including cooking and cleaning, doing laundry, shopping, watching television, and caring for her two school-aged children. (Dkt. #8-7 at 20, 379, 384). The ALJ's decision discussed plaintiff's migraine headaches and her history of treatment for them in detail, and his RFC determination included limitations calculated to prevent plaintiff's exposure to migraine triggers such as noise, bright lights and respiratory irritants, as well as a limitation to simple, routine, repetitive, low stress, quota-free jobs with no

6

hazardous conditions. Overall, the ALJ's implicit finding that plaintiff's migraine headaches did not require the imposition of additional or more extreme limitations was supported by substantial evidence, and I find no reason to disturb it.

## II. The ALJ's Evaluation of Medical Opinions

Plaintiff also objects to the weight given by the ALJ to the medical opinions of record. Plaintiff argues that because the ALJ's RFC finding was not based upon any particular medical assessment, it improperly resulted from the ALJ's interpretation of "raw medical data."

First, the ALJ gave "some" weight to the opinion of consulting psychologist Dr. Adam Brownfeld, who examined plaintiff in May 2014 and found that she had *no* mental or psychological limitations other than a mild limitation in appropriately dealing with stress. (Dkt.#8-7 at 382-85). The ALJ found the opinion "somewhat consistent" with the objective medical evidence, given plaintiff's history of a learning disorder and indications of below-average intellectual functioning, but ultimately determined that the record supported greater limitations than Dr. Brownfeld opined.

The ALJ gave "little" weight to the opinion of consulting internist Dr. Harbinder Toor (Dkt. #8-7 at 378-81), who examined plaintiff in May 2014. Dr. Toor's objective examination findings were grossly normal (e.g., normal gait and stance, full spinal flexion and extension, full range of motion in all extremities, 5/5/ strength in upper and lower extremities) although Dr. Toor did note positive straight leg raising tests, and 4/5 grip strength in plaintiff's hands, with mild difficulty engaging in fine motor activity. Dr. Toor concluded that plaintiff had "moderate" limitations in standing, walking, sitting, bending and lifting, "mild" limitations with respect to the use of her hands and fingers, should avoid respiratory irritants, and might experience interference with her routine due to "[p]ain and headache." (Dkt. #8-7 at 381). The ALJ declined to fully credit Dr. Toor's findings, noting that although the record showed that plaintiff has periodic

7

migraine headaches, the record did not establish that her carpal tunnel syndrome and asthma were severe impairments. (Dkt. #8-2 at 21).

The ALJ also gave "little" weight to the July 2012 opinion of consulting psychologist Dr. Christine Ransom, who examined plaintiff before she commenced mental health treatment. Dr. Ransom found that plaintiff had "moderate" limitations in her ability to understand and follow simple instructions, perform complex tasks independently, maintain attention and concentration, maintain basic hygiene standards, use public transportation, and complete low stress and simple tasks. (Dkt. #8-7 at 410). Dr. Ransom opined that plaintiff was incapable of doing anything other than participate in therapy for 3-6 months. (Dkt. #8-7 at 411). The ALJ's RFC finding appears to credit the bulk of the moderate limitations opined by Dr. Ransom, by limiting plaintiff to simple, low stress work with no quotas and only occasional decision making. However, the ALJ declined to credit Dr. Ransom's opinion that plaintiff was otherwise disabled for a period of time, noting that the record indicated that plaintiff's subsequent outpatient treatment for anxiety and depression had improved her symptoms, and that her completion of school through 11th grade suggested a lower level of limitation than that indicated by Dr. Ransom. (Dkt. #8-2 at 22).

Two opinions by Licensed Medical Health Counselor Kimberly Carducci, as well as opinions by Licensed Clinical Social Worker Elizabeth Caton-Burn and physicians' assistant Myra Rodriguez, were also given "little" weight. Each found that in addition to one or more moderate limitations, plaintiff was "very limited" in the ability to follow and understand simple instructions, perform simple and complex tasks independently, and/or to maintain attention and concentration for rote tasks. (Dkt. #8-9 at 628-31, 632-34, 656-59, #8-17 at 1378-89). The ALJ observed that none of these sources was an acceptable medical source, and moreover found that plaintiff's GAF

scores, psychological treatment records, and completion of school through the 11th grade indicated a lesser degree of limitation than these sources described. (Dkt. #8-2 at 22).

While "the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision," he was "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (unpublished opinion). Furthermore, it is "not require[d] that [the] ALJ have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir.1983). *See generally Tankisi v. Commissioner*, 521 F. Appx. 29, 34 (2d Cir. 2013) (remand not required even though ALJ rejected medical opinions of record, where "the record contains sufficient evidence from which an ALJ can assess the petitioner's [RFC]").

I do not find that the ALJ's assessments of the medical opinions of record were erroneous. While the ALJ did not adopt any of the medical opinions *in toto*, he set forth the weight given to each opinion and explained the reasons therefor, including whether the opinion was from an acceptable medical source, whether the opinion was rendered during the period under review, whether the opinion was internally consistent, and whether the opinion was consistent with other medical evidence of record, including plaintiff's GAF scores, treatment records, academic performance, and self-reported activities of daily living. These factors were properly considered. *See generally Wetzel v. Berryhill*, 2019 U.S. App. LEXIS 26749 at *3 (2d Cir. 2019) (citing 20 C.F.R. §404.1527). As such, I do not find that the ALJ erred in his evaluation of the medical opinion evidence, or that he improperly substituted his "own expertise or view of the medical proof [in place of] any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

9

I have considered the rest of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the forgoing reasons, I find that the ALJ's decision was supported by substantial evidence, and that any legal errors therein are harmless. The plaintiff's motion for judgment on the pleadings (Dkt. #11) is denied, the Commissioner's cross motion for judgment on the pleadings (Dkt. #13) is granted, and the Commissioner's decision that plaintiff is not disabled is affirmed in its entirety.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
January 3, 2020.